ERNEST A. COPSTEAD AND LILLIAN COPSTEAD, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Copstead v. Commissioner
Docket No. 10497-83.
United States Tax Court
T.C. Memo 1984-577; 1984 Tax Ct. Memo LEXIS 93; 48 T.C.M. (CCH) 1500; T.C.M. (RIA) 84577; October 31, 1984. *93 Ernest A. Copstead, pro se. Milton J. Carter, for the respondent. WILBUR MEMORANDUM FINDINGS OF FACT AND OPINION WILBUR, Judge: Respondent determined a deficiency in petitioners' Federal income tax return for the taxable year 1981 in the amount of $6,187, and an addition to tax under section 6653(a) [1] in the amount of $309. The issues for determination are: (1) Whether an exclusion from gross income claimed by petitioners in 1981 in connection with a plan for assignment of income is allowable; and (2) Whether there is due from the petitioners for the taxable year 1981 the addition to tax for negligence or intentional disregard of rules and regulations pursuant to section 6653(a). FINDINGS OF FACT Some of the facts have been stipulated by the parties and are found accordingly. Petitioners Ernest Copstead (petitioner) and Lillian Copstead, husband and wife, were residing in Kennewick, Washington at the time the petition was filed in this case. On March 28, 1980, petitioner Ernest Copstead signed a document titled *94 Intrusted Personal Services Contract (Services Contract). By signing this contract petitioner entered into an irrevocable services contract with an entity called Professional & Technical Services (PTS). In exchange for 27 economic justifications, the petitioner agreed to sell his personal services, as an electrician, to the organization for $1 per year. The Services Contract required that each paycheck petitioner received be endorsed and delivered to PTS. PTS sold the check to International Dynamics, Inc. (IDI) for $1, and IDI transferred these proceeds to IDI Credit Union, a charitable organization. Although the Services Contract did not guarantee it, petitioner had an expectation that IDI would give him a gift of approximately 90 percent of the value of each paycheck he had endorsed to IDI. After signing the Services Contract in 1980, and continuing throughout most of 1981, petitioner endorsed all of his paychecks over to IDI. The checks were either mailed or delivered to James Russell (Russell), an agent for IDI. Thereafter, petitioner would receive an IDI credit union check in an amount equal to 92 percent of his paycheck. This continued until October of 1981 *95 when petitioner delivered a paycheck to Russell in his Yakima, Washington office. Upon arriving at Russell's office petitioner was told that the "IRS had been in, raided [the] office, [and] took all of [the] files." Petitioner's reaction to this was that "obviously this thing is not a legal entity and I don't want to have anything to do with it." Petitioner did not leave the endorsed paycheck with Russell and from that point on disassociated himself from IDI. On petitioner's 1981 Federal income tax return, $3,029.18 was entered on line 7. Petitioner arrived at this number by starting with the total amount of wages received ($33,870.89), and subtracting the amount he relinguished to PTS ($30,841.71). Petitioner attached a personal affidavit attesting to the fact that $30,841.71 "was the true and correct amount relinquished by me as their earnings under our mutual contract by which my life services were sold for just consideration and for which I was reimbursed per the contract." Respondent issued a notice of deficiency determining that petitioner improperly excluded this amount from gross income. Respondent argues that petitioner has simply made an assignment *96 of income in contravention of the tax laws and has done so negligently and with intentional disregard for the rules and regulations. OPINION This case is identical to , as to the transactions involved, the documents utilized, and the individuals and entities that were parties to the arrangements with petitioner. As we concluded in Benningfield, "petitioner's attempt to shift to PTS the tax incidence of the income he earned is ineffective, and petitioner remains taxable on his wages". . [2] This "plan is simply an anticipatory assignment of income, and will result in the avoidance of taxes no more than the 'family trust' plan which it resembles." , citing; . *97 It is well established that income must be taxed to the one who earns it. United States v; ; . Petitioner earned income as an electrician and remains liable for income tax on the full amount of those earnings. Thus, we agree with respondent, for all the reasons outlined in Benningfield, that petitioner has made an assignment of income contrary to the tax laws. See . The second issue is whether we find that part of the underpayment is due to petitioner's negligence and intentional disregard of the rules and regulations. See section 6653(a). We believe that petitioner was misled by people who appeared to have respectable business and financial expertise. Petitioner, an electrician all his life, has no familiarity with accounting or tax law. Although gullible on this occasion, we found him to be an honest and sincere man who was misled. On the basis of the entire record, we decline to find that petitioners negligently or intentionally disregarded the rules and regulations. We sustain the deficiency *98 in income tax for 1981 but decline to impose a section 6653(a) addition. Accordingly, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended.↩
2. Cf. ; ; . We also note that we have reached the same conclusion with respect to similar tax avoidance schemes. See , affd. ; .↩